**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Nicole Antionette Bishop,<br>Plaintiff,<br>v.<br>Commissioner of Social Security Administration,<br>Defendant. | No. CV-26-01466-PHX-JAT<br>**ORDER** |

Pending before the Court is Plaintiff Nicole Bishop's appeal from the Commissioner of the Social Security Administration's ("SSA" or "Defendant") denial of Social Security benefits. (Doc. 1). The appeal is fully briefed (Doc. 10; Doc. 16; Doc. 17), and the Court now rules.

## I. BACKGROUND

### A. Factual Overview

Plaintiff was 46 years old on her date last insured of December 31, 2020. (Doc. 8-3 at 738, 746). She has an associate's degree in nursing and a history of past relevant work as a nurse. (Doc. 8-1 at 56, 72). On May 5, 2021, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning June 1, 2019. (*Id.* at 45). After an administrative hearing, an Administrative Law Judge ("ALJ") denied Plaintiff's claim. (*Id.* at 58). The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the agency's final decision. (*Id.* at 3). Plaintiff appealed and the case was remanded. (Doc. 8-3 at 735). On remand, the ALJ again issued

an unfavorable decision, the Appeals Council denied review, and Plaintiff filed the present appeal. (*Id.* at 727, 749; Doc. 1).

**B. The SSA's Five-Step Evaluation Process**

To qualify for social security disability insurance benefits, a claimant must show that he "is under a disability." 42 U.S.C. § 423(a)(1)(E). To be "under a disability," the claimant must be unable to engage in "substantial gainful activity" due to any medically determinable physical or mental impairment. *Id.* § 423(d)(1). The impairment must be of such severity that the claimant cannot do his previous work or any other substantial gainful work within the national economy. *Id.* § 423(d)(2). The SSA has created a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(1). The steps are followed in order, and each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At Step One, the ALJ determines whether the claimant is engaging in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity that is (1) "substantial," i.e., doing "significant physical or mental activities," and (2) "gainful," i.e., usually done "for pay or profit." 20 C.F.R. § 416.972(a)–(b). If the claimant is engaging in substantial gainful work activity, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(i).

At Step Two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or severe "combination of impairments." *Id.* § 404.1520(a)(4)(ii). To be "severe," the claimant's impairment must "significantly limit[]" the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(ii).

At Step Three, the ALJ determines whether the claimant's impairment(s) "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the ALJ will find the claimant is disabled, but if not, the ALJ must assess the claimant's "residual functional capacity" ("RFC") before proceeding to

Step Four. *Id.* §§ 404.1520(a)(4)(iii), 404.1520(e). The claimant's RFC is his ability perform physical and mental work activities "despite [his] limitations," based on all relevant evidence in the case record. *Id.* § 404.1545(a)(1). To determine RFC, the ALJ must consider all the claimant's impairments, including those that are not "severe," and any related symptoms that "affect what [the claimant] can do in a work setting." *Id.* § 404.1545(a)(1)–(2).

At Step Four, the ALJ determines whether the claimant has the RFC to perform the physical and mental demands of his "past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 404.1520(e). "Past relevant work" is work the claimant has "done within the past five years that was substantial gainful activity and that lasted long enough for [the claimant] to learn to do it." *Id.* § 404.1560(b)(1)(i). If the claimant has the RFC to perform his past relevant work, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform his past relevant work, the ALJ will proceed to Step Five in the sequential evaluation process.

At Step Five, the final step, the ALJ considers whether the claimant "can make an adjustment to other work," considering his RFC, age, education, and work experience. *Id.* § 404.1520(a)(v). If so, the ALJ will find the claimant not disabled. *Id.* If the claimant cannot make this adjustment, the ALJ will find the claimant is disabled. *Id.*

**C. The ALJ's Application of the Factors**

Here, at Step One, the ALJ concluded that Plaintiff did not engage in substantial gainful activity during the period of her alleged onset date of June 1, 2019, through her date last insured of December 31, 2020. (Doc. 8-3 at 738).

At Step Two, the ALJ determined that Plaintiff had the following severe physical impairments: "lumbar spondylosis; major depressive disorder; ADHD, combined type; PTSD; opioid dependence, uncomplicated/heroin use, disorder." (*Id.*)

At Step Three, the ALJ found that Plaintiff did not have any impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 739). The ALJ then

found Plaintiff had the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) except occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; avoid concentrated exposure to hazards, like dangerous moving machinery and unprotected heights; able to understand, remember, and carry out simple instructions and make simple, work-related decisions in a routine work setting, able to perform tasks that do not involve a specific production rate pace, like that found in assembly line work or work requiring an hourly production quota; frequently interact with supervisors, coworkers, and the public.

(Doc. 8-3 at 740.)

At Step Four, the ALJ established that Plaintiff was unable to perform any past relevant work. (*Id.* at 746). At Step Five, the ALJ found there were other jobs existing in significant numbers in the national economy that Plaintiff could perform, considering her age, education, work experience, and RFC. (*Id.* at 747).

## II. LEGAL STANDARD

This Court may not set aside a final denial of disability benefits unless the ALJ's decision is "based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). "Substantial evidence" is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). It requires "more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)). This Court must consider the record in its entirety, "weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion." *Revels*, 874 F.3d at 654 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)).

The ALJ—not this Court—is responsible for resolving ambiguities, resolving conflicts in medical testimony, determining credibility, and drawing logical inferences from the medical record. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)); *Gallant v. Heckler*, 753 F.2d

1450, 1453 (9th Cir. 1984). Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [courts] must defer to the ALJ's conclusion."). Further, this Court may only review the reasons the ALJ provides in the disability determination; it "may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

## III. DISCUSSION

Plaintiff argues the ALJ committed harmful error by (1) rejecting Plaintiff's symptom testimony and (2) failing to adequately address and resolve conflicts between Plaintiff's job evidence and the vocational expert's ("VE") evidence. (Doc. 10 at 1).

### A. Plaintiff's Symptom Testimony

Plaintiff argues that the ALJ erred in failing to provide specific, clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony. (Doc. 10 at 10). Conversely, Defendant argues the ALJ's assessment of Plaintiff's subjective symptom testimony was reasonable and supported by substantial evidence. (Doc. 16 at 4).

1. Legal Standard for Evaluating Symptom Testimony

In assessing the credibility of a claimant's subjective symptom testimony, an ALJ must engage in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal citation and quotation marks omitted). "Second, if the claimant meets [the] first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

The "specific, clear, and convincing" standard is satisfied where the "ALJ's

rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). To be sufficiently specific, the ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). Moreover, "[t]he evidence upon which the ALJ relies must be substantial." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "If the ALJ's credibility finding is supported by substantial evidence in the record, [courts] may not engage in second-guessing." *Thomas*, 278 F.3d at 959.

Factors an ALJ may consider when determining credibility include: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Ghanim*, 763 F.3d at 1163 (quoting *Smolen*, 80 F.3d at 1284).

2. <u>The ALJ's Evaluation of Plaintiff's Symptom Testimony</u>

The ALJ summarized Plaintiff's testimony at the administrative hearing as follows:

> The claimant previously testified and reported that she was unable to work due to back pain, neuropathy, lower extremity numbness and muscle spasm. She testified she was unable to sit, stand or lie down for more than 15 minutes at a time. She reported she could lift no more than 5 pounds. She explained she missed a lot of work due to her symptoms and her need for medication which resulted in fatigue and poor memory. She testified she developed incontinence which caused many accidents and required her to wear briefs. Additionally, the claimant described several mental health-related symptoms and functioning difficulties prior to the date last insured, including anxiety, depressed mood, memory deficits, concentration problems, comprehension/cognitive difficulties, insomnia, and panic attacks. She also reports problems following written instructions, completing tasks, handling stress, and dealing with changes in routine.

(Doc. 8-3 at 741 (citing Doc. 8-1 at 278, 281, 283–84)).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms. (*Id.* at 745). However, the ALJ concluded the evidence did not support the severity of Plaintiff's alleged symptoms and was inconsistent with the extent of limitation that Plaintiff alleged. (*Id.*)

First, Plaintiff argues the ALJ "cancel[led] out the objective findings that supported [Plaintiff's] symptom testimony by noting some normal examinations findings" like Plaintiff's "normal gait, full extremity strength, intact sensation, and independent ambulation." (Doc. 10 at 11). The Court construes Plaintiff's argument to mean the ALJ failed to explain how these "normal examinations findings" were inconsistent with Plaintiff's "symptom testimony concerning chronic pain or worsening incontinence." (*Id.* at 11). Plaintiff misreads this portion of the ALJ's decision. In relevant part, the ALJ found:

> Examinations performed in April 2019, January 2020, and March 2020, found lumbar facet joint tenderness, lumbar paraspinal tenderness, positive straight leg raising tests, positive lumbar facet provocation, and limited/painful lumbar range of motion. Other physical examinations during this period were unremarkable, and found normal gait, normal station, full extremity strength, normal cervical spine, intact sensation, and independent ambulation. While the claimant reported symptoms such as back and hand pain, she denied other symptoms, including instability when walking, neck pain, joint pain, joint stiffness, and joint swelling. This suggests an ability to stand, walk, sit, lift and carry despite her complaints.

(Doc. 8-3 at 741 (citing Doc. 8-1 at 386–88, 391, 395–96; Doc. 8-2 at 258, 262, 613)).

The ALJ does not discredit Plaintiff's testimony regarding her "chronic pain or worsening incontinence," as Plaintiff contends. (Doc. 10 at 11). Rather, the ALJ merely notes Plaintiff has the ability to "stand, walk, sit, lift and carry despite her complaints." (Doc. 8-3 at 741). Accordingly, the Court finds no error.

Second, Plaintiff contends the ALJ erred by discrediting Plaintiff's symptom testimony after finding Plaintiff's pain improved with treatment. An ALJ may discount a claimant's testimony based on effective treatment. *Degen v. Berryhill*, 725 Fed. Appx. 550, 553 (9th Cir. 2018) (holding that improvement after seeking treatment is a clear and convincing reason to question the plaintiff's symptom testimony).

Here, the ALJ cited record evidence that showed improved symptoms with treatment, but she ignored other medical reports in the exhibits she cited that indicated otherwise. For example, the ALJ noted that Plaintiff experienced an 80% decrease in pain with lumbar steroid injections. (Doc. 8-3 at 741). But the same report stated that while

Plaintiff experienced greater than 80% pain relief, Plaintiff felt she had worsening bowel and bladder incontinence. (Doc. 8-1 at 393).

Additionally, the ALJ noted Plaintiff improved with physical therapy, chiropractic adjustment, ibuprofen, home exercises, and stretches. (Doc. 8-3 at 741). Yet the same exhibit the ALJ relied on specifically stated, "the pain has [i]ncreased," "[p]rior to today's visit the patient has had chiropractic care, epidural steroid injection, cervical and physical therapy . . . and [s]he has been doing the home exercise program and stretching exercises [] which normally do control her pain but they have not been helping." (Doc. 8-2 at 256). The ALJ cannot cherry-pick sentences or phrases while ignoring the greater context. *Garrison*, 759 F.3d at 1017 n.23. Accordingly, the Court does not find the ALJ provided substantial evidence to support her decision to find improvements in Plaintiff's physical conditions discredited Plaintiff's symptom testimony.

The ALJ, however, did not reject Plaintiff's symptom testimony solely because there were signs of improvement in the record—the ALJ also cited inconsistencies in the medical evidence and Plaintiff's daily activities, discussed below, as reasons for discrediting her. Because the ALJ permissible discredited Plaintiff's testimony based on these two reasons, her error was harmless. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (indicating that if the ALJ rejects Plaintiff's symptom testimony for a single permissible purpose, then the ALJ's errant rejection of the testimony for other additional reasons is harmless).

Third, Plaintiff argues the ALJ improperly discounted Plaintiff's symptom testimony based on the ALJ's erroneous belief that Plaintiff's testimony was inconsistent with her activities. (Doc. 10 at 14). Specifically, Plaintiff argues *Vertigan v. Halter*, 260 F.3d 1044, 1049–50 (9th Cir. 2001) requires a finding that a "*substantial part of a typical day* was spent engaged in activities inconsistent with disability limitations" to discredit Plaintiff's testimony. (*Id.*) The Court disagrees. *Vertigan* has no such requirement, instead it notes that "if a claimant 'is able to spend a *substantial part* of [her] day engaged in pursuits involving the performance of physical functions," then "a specific finding as to

this fact **may be** sufficient to discredit a claimant's allegations." (emphasis added) (citation omitted).

Moreover, "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Smartt*, 53 F.4th at 499 (quoting *Carmickle*, 533 F.3d at 1161). And an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Lingenfelter*, 504 F.3d at 1040. "Even if the claimant experiences some difficulty or pain, her daily activities 'may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.'" *Smartt*, 53 F.4th at 499 (quoting *Molina*, 674 F.3d at 1113).

Here, the ALJ explained that Plaintiff's activities of daily living were "inconsistent with the claimant's alleged inability to perform activities such as walking, standing, and sitting for more than a few minutes," and "inconsistent with the claimant's function report in which she says that she is unable to finish what she starts." (Doc. 8-3 at 743). The ALJ noted that reports from December 2020 indicate "that she spends 'a great deal of her of the time during the day attending to [and] completing tasks and errands for her significant other[].'" (*Id.*) While "[d]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," Plaintiff's ability to complete tasks and errands for her significant other may be reasonably interpreted as inconsistent with her testimony that she cannot walk, stand or sit for more than a few minutes and she struggles finishing what she starts. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (noting that a claimant's credibility may be affected if the level of activity is inconsistent with the claimant's alleged limitations). Further, to the extent Plaintiff briefly argues she struggled to complete school, the ALJ acknowledged this in her findings. (Doc. 8-3 at 743). Accordingly, the Court finds the ALJ's decision to discredit Plaintiff based on her daily activities is supported by substantial evidence.[1]

[1] In two footnotes, Plaintiff broadly argues the ALJ erred in discrediting Plaintiff's symptom testimony regarding her mental health. (Doc. 10 at 11 n.3, 13 n.4). "Bare assertions and lists of facts unaccompanied by analysis and completely devoid of caselaw fall short of the requirement" for appellate review. *Sekiya v. Gates*, 508 F.3d 1198, 1200 (9th Cir. 2007); *see also Carmickle*, 533 F.3d at 1161 n.2 (explaining that a claimant waives an issue by failing to argue it "with any specificity" in her opening brief). Accordingly, this

**B. Plaintiff's Challenge to the ALJ's Finding at Step Five**

Plaintiff argues the ALJ erred by failing to resolve alleged conflicts between Plaintiff's "counter job evidence" and the VE's estimates for jobs in the national economy. (Doc. 10 at 15). Plaintiff further contends her presented evidence was both significant and probative, and under *Powley v. Bisignano*, 169 F.4th 1158, 1169 (9th Cir. 2026), the ALJ was required to address the inconsistencies in the number of jobs. (Doc. 10 at 20-21).

"[T]o determine whether the ALJ had a duty to address a conflict in job-number evidence (and failed to discharge that duty), [the Court] consider[s] on a case-by-case whether new evidence submitted by a claimant is 'meritless or immaterial' or has 'significant probative' value." *Wischmann v. Kijakazi*, 68 F.4th 498, 506 (9th Cir. 2023). "If the new evidence is significant and probative, [the Court] must remand to the ALJ to address the inconsistency in the record evidence." *Powley*, 169 F.4th at 1166 (citing *id.*).

The first step is to determine whether the counter evidence is probative. *Id.* In *Wischmann*, a plaintiff's attorney presented job estimates that differed from the VE's. *Wischmann*, 68 F.4th at 503. In support, he attached six pages of "computer printout[s]" that did not indicate how the job estimates were sourced. *Id.* at 506. The Ninth Circuit Court of Appeals held the "six pages of printouts" were not probative because the printouts failed to show the data was produced using the same methodology as the VE and did not indicate how the job numbers were produced. *Wischmann*, 68 F.4th at 506–07.

Here, the VE indicated there were 10,047 jobs nationally for survey workers; 31, 535 jobs nationally for fundraiser II's; and 12,515 jobs nationally for telephone solicitors. (Doc. 8-4 at 96). The VE relied on the Dictionary of Occupational Titles ("DOT) in estimating these numbers. (*Id.*) Plaintiff's hearing counsel argued that according to Department of Labor data, there were only 7 jobs in the national economy for survey workers. (Doc. 8-4 at 118). He also argued there were only "33 DOT occupations under the sales representative [Bureau of Labor Statistics' Standard Occupational Classification] SOC code. Only 2 of the 33 are sedentary, and neither is unskilled." (*Id.* at 119). And the

---

argument is waived.

VE failed to account for 16% of telephone solicitor jobs that are unskilled. (*Id.*)

Plaintiff's counterevidence is not probative. The counterevidence does not explain how the job numbers were produced nor does it show that the data was produced using the same methodology as the VE. Additionally, the counterevidence does not give a numerical comparison for the number of available fundraiser II jobs but analogizes fundraiser II jobs to sales representatives. (Doc. 8-4 at 119). In addition to citing a different job description, the counterevidence cites to the number of sales representative jobs under the SOC code, whereas the VE relied on the DOT when estimating the number of fundraiser II jobs in the national economy. The counterevidence is not comparable to the VE's estimate. *See Wischmann*, 68 F.4th at 502 ("[T]he criteria for SOC occupation codes are different than the DOT occupation codes . . . [so] employment data corresponding to a single SOC occupation code does not correspond to a single DOT occupation code."). Additionally, the counterevidence does not provide "information about what queries were entered into the program, what variables were changed, or what filters were applied to the data." *Id.* at 507. Because the counterevidence is not probative, the Court does not need to reach the second step to determine if it is significant. Therefore, Plaintiff's counterevidence does not undermine the VE's testimony, and there was no inconsistency that the ALJ was required to resolve.

**C. Alternative Proceedings**

Finally, Plaintiff requests remand for a calculation of benefits pursuant to the credit-as-true rule, or in the alternative, further administrative proceedings. (Doc. 10 at 23). However, because the Court is upholding the ALJ's decision, the Court denies Plaintiff's request for remand without considering the credit-as-true doctrine. *See Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017) (stating a direct award of benefits is only appropriate "when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for a denial of benefits").

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

Dated this 18th day of September, 2026.

James A. Teilborg
Senior United States District Judge